Final case for argument is 23-2285, Maxwell v. Amperex Technology. I guess it's good afternoon. Good afternoon, Your Honor. Before I start, I see I have 15 minutes on the clock. I believe I reserved three. Yes, that's why the yellow light will go on. Oh, okay. I'm sorry. This is my first time. Sure. Good morning, Your Honor. Good afternoon, Your Honor. May it please the Court, my name is Jeffrey Hahn, and I'm here representing the appellant and patent owner, Maxell, Ltd. The Imagi prior art reference at issue in this appeal is not analogous art to Maxwell's 251 patent. ATL found Imagi because they were looking for a reference that had the particle distribution that fit the distribution claimed in the 251 patent without regard to the context of the reference. This is pure improper hindsight analysis. The problem and purpose of Imagi bear no resemblance to that of the 251 patent. Imagi isn't for batteries or battery separators. Imagi deals with dissipating heat from coils in rotating machines like electric motors or generators. It uses an epoxy resin to encase the coils and provide electrical isolation, and then it uses thermally conductive filler particles in the resin to dissipate heat from the coils like a heat sink. On the other hand, the 251 patent uses heat-resistant fine particles in a layer of the battery separator to withstand heat or eliminate deformation of those particles and keep the separator from shrinking. The 251 patent says nothing about thermal conductivity of its particles, just as Imagi says nothing about heat resistance of its particles. Thus, a person of ordinary skill in the art would not have looked to Imagi when considering the problem of the 251 patent, and Imagi is not analogous art. Analogous art is determined under two tests, the Field of Endeavor test and the Reasonably Pertinent test. First... So can I just kind of shortcut this, which is that we've got a substantial evidence review here. So what can you point us to in the board's decision that you think was just wrong, as a factual or a legal matter, I guess? Yes, Your Honor. The board's specific findings on its way to concluding that the Imagi is analogous art is filled with misunderstandings of the 251 patent, Imagi, and the Reasonable Pertinence test. So first, the board incorrectly found that Imagi is reasonably pertinent because it addresses, quote, how to make a resin with sufficient heat resistance. The board and ATL make a big deal out of Imagi's disclosure of an epoxy resin that has excellent heat resistance, and Maxell's admission of such. But the problems of the 251 patent are not addressed by a heat-resistant resin at all, as used in Imagi. Instead, the 251 patent's problem and solution... Can I just, it would help me, and I'm sorry if this is just too elementary. What does heat resistance mean? Your Honor, in the 251 patent, it defines heat resistance as the particles avoiding deformation at a certain temperature. I believe it was something like 200 degrees Celsius.  And thermal conductivity, on the other hand, is a completely separate characteristic of the particles. Just as if you were in the kitchen, heat resistance is what protects your hand from burning on pots and pans, heat conductivity is like your cookie sheet, transferring the heat to the cookies. My oven mitt at home would be very poor at protecting my hand if it were thermally conductive, but it is very good at protecting my hand because it's heat-resistant. I mean, I guess the way you're describing it, and I think maybe the Board said this, that they are, in a way, inverses of each other. That is, what makes something heat-resistant is that it doesn't conduct the heat. That's not necessarily the case, Your Honor. These are two different features, and it's completely dependent on the materials. One thing the Board relied on from ATL's expert, Dr. Van Schalkwijk, is his statement that the properties of these alumina particles would have been the same, regardless of whether you're applying it in Imagi or you're applying it in the 251 patent. But under this Court's decision in Rayclay, the fact that these properties would have been the same for these particles is the wrong analysis because under Clay and under other decisions of this Court, the focus needs to be on the context of the prior art reference, the reference as a whole, because this is an analogous art test, not an analogous element test, so we cannot just focus in on the one piece of the reference that is argued to be relevant to the challenged patent. What about the other rationale, which is consulting Imagi because of the particle size of the filler it discloses, the AA03 alumina, and I think, as I understood it, the Board set it up by saying, well, it was known in the art that, you know, to build these resin layers, you would want it to be heat-resistant, particle size matters, and it was also known to use AA03 or alumina, and then when it comes to Imagi, Imagi is the one that discloses AA03 and tells you what the size distribution is inside of AA03. Well, you still have to consider whether Imagi is analogous art. You can't just go into Imagi and pick out the AA03 just because you say that particle distribution could be used in a battery. So I guess the idea is that it was known in the art that when you're making these kinds of layers, you want a certain kind of particle, and alumina is a type of particle, and you know that the particle size matters, and so now you're trying to find, I don't know, existing particles that would be of a good size, and lo and behold, Imagi is something that teaches you about the particle size of AA03. Your Honor, respectfully, that doesn't mean that you can just completely discard the analogous art test. You still need to, under that test, look at these references as well. Well, then to put a finer point on it, therefore, Imagi is reasonably pertinent to, you know, the particle size concerns that a skilled artisan would have in building, you know, this kind of separator. Well, that would only be the case if you are focused in on nothing but the AA03 aspect of Imagi, because nothing else about Imagi or its use of the summa corundum AA03 is in any way similar to the problem confirmed by the 251 patent or the purpose of the 251 patent. The context in which the AA03 is used is entirely different from that of the 251 patent. It is not used to dissipate heat. Instead, it is used to avoid the deformation and keep this thin film that is the battery separator from shrinking at high temperatures. It is the heat resistance that matters in the 251 patent, whereas in Imagi, it only refers to the heat conductivity of the particles and never even considers the heat resistance of the particles because that doesn't matter to Imagi's solution. Do you dispute the board's finding that a skilled artisan knew that AA03 had been used in battery separators? Yes, we do dispute that. That is our argument with regard to the Shinohara reference. Shinohara is the only piece of evidence relied upon by ATL's expert, Dr. Vin Shalkwick, to say that a person of ordinary skill in the art would have known as part of his background knowledge that AA03 had been used in batteries. Without Shinohara, that testimony is unsupported and cannot provide substantial evidence to support the board's finding. Shinohara uses in one test sample created by the inventors out of around 10 examples an alumina particle. It is not described as AA03. It is described as a sumicorundum alumina particle from the Sumitomo Chemical Company. It describes the size, but it doesn't say AA03. It is four lines out of a 24-column specification, which they are trying to argue discloses the background knowledge of a person of ordinary skill in the art. But the scope of the knowledge of a person of ordinary skill is not the same as the scope of all prior art. That is clear from this court's decisions that distinguish the two. There is no evidence in the Shinohara reference regarding what a person of ordinary skill would have actually known. Didn't their witness, their expert witness testify about his reading and his understanding of the reference, and that's what the board deferred to? Dr. Vinshalkwik's testimony that there was this background knowledge was based solely on Shinohara. So otherwise, he doesn't have anything else to base that opinion on. And so if this court agrees... Just to be clear, is that a necessary part of the reasonable pertinence portion of the analogous art? That is, that a skilled artisan would know of a particular piece of prior art? In this case, the way that ATL and the board got to trying to argue that Amagi was reasonably pertinent went in part through Shinohara and this background knowledge, because their argument is that a person of ordinary skill in the art would have known that AA03 had been used in battery separators, and therefore they would have gone out and sought the particle distribution of AA03 to see if it fit with what was claimed in the 251 patent. So here, we would argue that even if that knowledge was in the background knowledge of a person of ordinary skill in the art, which we're saying it's not, but hypothetically if it was, that still wouldn't change the reasonable pertinence test or the analogous art test, because you still have to look to see if Amagi is reasonably pertinent to the actual problems addressed by the 251 patent. And if you compare this case with the facts of the clay case, for example, and the gel solution that was at issue there, and the features of that gel were the same, whether it was used in that prior art reference, Cydansk, or the clay application, and this court said, no, that prior art reference is not analogous art because it was used in a completely different context, and a person of ordinary skill would not have looked to that context in trying to address the problem of the clay application. As you can tell, your yellow light is on, which means you're in your rebuttal time. Thank you, Your Honor. I will reserve the rest of my time for rebuttal. Thank you. Good morning. May it please the court, I'll pick up with the Shinohara discussion, and then we'll take a step back and look at the 251 patent in Amagi. On the issue of Shinohara, there's absolutely substantial evidence to support what the board found, and what the board found of APPX20 is they said, quote, we also credit Dr. Van Schakwyk's testimony, that's our expert's testimony, We credit his testimony that a proceeding would have understood that AA03 had been used in separators, i.e. that Amagi's particles were, in fact, used in batteries. And the point there with Shinohara was not that we needed the side reference. Dr. Van Schakwyk's testimony was enough by itself. It's substantial evidence itself about this, but rather than have, arguably, potentially conclusory testimony of an expert saying, because I said so, we had him, also he found Shinohara and cited that and said, look, this shows, Your Honor, the PTAP judges, exactly what I'm saying, it's making the same point. And that supports Amagi's reasonable pertinence to the 251 patent. Taking a step back, I think it's worth looking at the 251 patent and what it's really talking about, and then in that context, seeing exactly why and how Amagi is easily reasonably pertinent to the problems solved in the 251 patent. My friend across the aisle said that there were misunderstandings by the board about the 251 patent, but there were not. The 251 patent focuses on this heat-resistant layer, and it has two components. It has the heat-resistant fine particles, and they're not just floating around in space. They're in a binder, and the patent makes clear that the heat-resistant fine particles are preferably alumina, and one example of the binder is a resin. So you have these alumina particles in a resin, and the goal of the patent is, according to their gray brief, their reply brief, they say it would be fair to say that the 251 patent deals with the problem of how to make a heat-resistant layer with sufficient heat resistance. We agree with that. The way the 251 patent describes making that heat-resistant layer is by having these alumina, these heat-resistant alumina particles, their expert acknowledged that alumina is heat-resistant. That's not an issue. The way their patent achieves this goal is by having alumina particles in a resin binder. That, together, is the heat-resistant layer. That is exactly what Imagi does. Imagi, they say also in their gray brief, this is at page 19, that Imagi, quote, does have a heat-resistant resin containing filler particles, close quote. Indeed, it does. The filler particles in Imagi are alumina, AA03. And Imagi says in paragraph 6 that it discloses, quote, an epoxy resin composition containing an epoxy resin and an inorganic filler, close quote. The inorganic filler is the alumina, AA03. So Imagi is disclosing exactly the same composition. Fine particles made of alumina in a resin layer. Those, that together, that composition is the heat-resistant layer of the 251 patent. Imagi says, they make this explicit, Imagi says in paragraph 10 at APPX 2050, that, quote, the epoxy resin has excellent heat resistance and low shrinkage. Those are the very things that were at issue in the 251 patent. How to have a heat-resistant layer that can be sufficiently heat-resistant while having low shrinkage. Do you think that statement in Imagi is talking about just the resin itself or the entire layer with the alumina particles inside of it? I think it could be looked at either way. But either way, it works sufficiently well for us. If Imagi, when it says that the resin has excellent heat resistance and low shrinkage rate, if that means just the resin by itself without the particles that Imagi puts in it, well, we all know that the alumina particles are heat-resistant by themselves. Their expert admitted that. I'm happy to show your honor where. And so if the resin layer itself is heat-resistant, adding the particles would only make it more so. I don't believe that's what Imagi is talking about when it's talking about its composition of being the particles in the resin. And that composition, we argue, has, according to Imagi in paragraph 10, excellent heat resistance and low shrinkage. So I think that would not make a difference if you construed it that way. But I don't want to belabor things too much. But the board identified multiple reasons, excuse me, multiple problems to be solved by the 251 patent. One of those was how to make a resin with sufficient heat resistance. I've already described that resin is the resin with the fine particles in it. That was the problem and solution achieved by the 251 patent. That's the same solution presented in Imagi. Our expert testified, and the board credited, I'll just read it. Quote, we find credible Dr. Van Schakwit's testimony that a person of ordinary skill in the art would have understood that the properties of the inorganic filler, that's alumina, the properties of the inorganic filler used to solve heat-related issues in a rotating machine, meaning Imagi, are the same when used to solve the similar heat-related issues in batteries. When we're looking at the scope of analogous art, and particularly under the reasonable pertinence test. I didn't quite understand that statement by the board. The heat-related, I mean, Imagi is talking about thermal conductance, thermal conductivity. And, you know, the invention is about heat resistance. So, it felt a little too loose by the board to kind of throw those two separate heat-related concepts and unify them together in that statement. I mean, do you agree that thermal conductivity is different from heat resistance? I certainly believe they're related concepts. If you have... How are they related? If you have high thermal conductivity, that certainly can help with heat resistance. Heat resistance, they both help heat escape. There are ways to manage excess heat. And more importantly, to your earlier question, the board disagreed with that argument by our friends at Mexcel. Because Imagi discloses aluminum particles, and aluminum particles are necessarily heat resistant. And their expert, we asked him at his deposition, and he agreed. Quote, they could be considered a heat-resistant particle. So, even if Imagi is talking about conductivity and doesn't specifically say resistance, the particles themselves are necessarily heat resistant. And their expert agreed with that. And the board, APPX 31 to 32, mentioned this very thing and found that they are necessarily heat resistant. And that is substantial evidence. It's correct. Their expert agreed with it. And so, it's certainly substantial evidence to support the finding that when we're looking at Imagi with its aluminum particles in the resin binder, doing the same things for a rotating machine that the 251 patent is doing in the context of batteries. It's not only reasonably pertinent, it's dead on. And when this court said in Weyers that the Supreme Court's decision in KSR directs us to construe the scope of analogous art broadly, that's what this court said. Now, I don't even think we need it to be broad in order for Imagi to qualify. But that is also the truth, that this court recognizes post-KSR that the scope of analogous art is to be construed broadly. And here, when we look at that standard, combined with the substantial evidence standard, and combined with the fact that Imagi is having aluminum particles in a resin, and doing it to have excellent heat resistance and low shrinkage rate, just like what the 251 patent is talking about, it's absolutely reasonably pertinent. I would ask the court to affirm. I'm happy to have plenty of time left, but I know today has also gone on long. I'd be happy to address any questions, but those are the core points I wanted to make. Thank you very much. Your Honors, I want to first address the point my friend made regarding the binder in which the 251 patent's heat-resistant fine particles are mixed in the heat-resistant layer. They tried this in their response brief, referring to the binder and tying that to the resin of Imagi. But I want you to look carefully at the board's decision, because the board, when referring to the resin of the 251 patent, is not pointing at the binder. It does not rely at all on the binder. The board does not. Instead, the resin that the board points to is a passage in column 5, I believe it's lines 31 to 44, of the 251 specification that refers to the types of materials that can make up the heat-resistant fine particles. In that passage, it describes two possible options in which resins are the fine particles. It doesn't talk about the fine particles being in a resin in that passage at all. So the binder is not something the board relied on, and it's not something that can constitute substantial evidence under this court's review, because this court can only uphold the board's decision based on what the board actually found and the evidence that the board relied on. Turning back to the board's specific findings, I just want to emphasize, because I didn't get a chance to finish before, first, when the board talked about the fact that Imagi is reasonably pertinent because it addressed how to make a resin with sufficient heat resistance, Imagi doesn't talk about how to make a resin. The resin already existed, and Imagi just recognizes that it was known that epoxy resins have high heat resistance. Also, when the board talks about the particular particle size of the filler in the heat-resistant resin being something that's pertinent to the 251 patent, there is no filler in any heat-resistant resin as relied upon by the board, and that relates to my binder point a moment ago. And so I see that I'm out of time. Thank you, and we ask that the court vacate the board's decision and hold that Imagi is not analogous art to the 251 patent. Thank you. Thank you, both sides. The case is submitted. That concludes our proceedings for this morning.